IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

JASON CONRAD POOLE,       \*

                                  \*

          Petitioner,         \*

                                    \*

        v.                    \*       Civil Action No. AW-06-1373

                                    \*

LEHRMAN DOTSON,       \*

                                    \*

        Respondent.         \*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM OPINION

Currently pending before the Court is a Petition for Writ of Habeas Corpus (Paper No. 1) and a Motion for Summary Judgment (Paper No. 7) filed by Petitioner Jason Conrad Poole ("Petitioner" or "Poole") against Lehrman Dotson, the Warden of Maryland Correctional Adjustment Center (the "Government"). Poole moves the Court to vacate the original sentence imposed upon him by this Court on August 6, 1997. The Court has reviewed the entire record, including the transcripts of the relevant proceedings in the Circuit Court for Prince George's County, Maryland. On January 9, 2007, the Court held a hearing on the instant petition and motion. After careful consideration of the issues surrounding Poole's request, the Court will grant the petition, vacate its original sentence, and issue a new sentence.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case have a long history in this Court. Over the course of the past ten years, the Court has become keenly familiar with Poole's situation. On February 6, 1997, a jury found Poole guilty of one count of possession with intent to distribute cocaine base (crack) in violation of 21 U.S.C. § 841(a)(1). On September 7, 1997, this Court sentenced Poole to 262 months

1

imprisonment, 10 years supervised release, and fined him a $100 assessment fee. At the time of his sentencing, it was believed that Poole had two prior felony convictions, one for a robbery in 1989 and one for possession with intent to distribute ("PWID") in 1991. Because of Poole's two prior convictions, the Court sentenced him as a career offender, subject to nearly a 10-year enhancement under § 4B1.1 of the United States Sentencing Guidelines.

Poole first challenged his conviction on appeal in September 1997, but the Fourth Circuit upheld his conviction. In 1999, Poole filed a Motion to Vacate, Set Aside, or Correct his sentence pursuant to 28 U.S.C. § 2255, claiming ineffective assistance of counsel. After Poole amended his pleading and a motions hearing, this Court denied his motion on February 11, 2002.

In October of 2002, Poole received a letter from a law clerk to Judge Michael P. Whalen, Circuit Court for Prince George's County, Maryland, informing Poole that Judge Darlene Perry had revised his 1991 conviction for PWID in favor of a judgment of conviction for possession of cocaine, a misdemeanor, by order signed on April 21, 1997. Judge Perry's order also set the matter for a hearing on June 6, 1997. After holding a hearing on June 6, 1997, it appears that Judge Perry denied Poole's motion for reconsideration on the record in open court.

Neither Poole's original Section 2255 petition motion nor its amendment alleged that his sentence enhancement was in error or asserted that the PWID conviction had been vacated at the time the federal sentence was imposed. However, upon receiving the letter from Judge Whalen's chambers, Poole attempted to file a second Section 2255 motion alleging that his sentence had been enhanced illegally. This Court directed Poole to obtain certification from the Fourth Circuit before filing a second Section 2255 petition, and the Fourth Circuit refused to issue a certificate of

appealability and dismissed the second petition as successive.[1]

At this point, Poole, proceeding *pro se*, filed a motion requesting relief of judgment pursuant to Rule 60 of the Federal Rules of Civil Procedure on April 7, 2003. In this motion, Poole again alleged his sentence was illegally enhanced due to the vacated PWID conviction. On July 28, 2004, this Court denied the motion as an attempt to circumvent the Fourth Circuit's ruling, which precluded Poole from filing successive claims. Poole also filed a Section 2241 petition for relief in the Eastern District of Kentucky, while incarcerated in that district, which the Kentucky court denied by written opinion on May 26, 2004 (the "Kentucky Opinion"). Thereafter, in August of 2004, Poole filed a Motion to Alter and Amend this Court's July 28, 2004 Judgment. The Court denied this motion on January 7, 2005. On January 14, 2005, Poole filed a Motion to Reconsider the January 7, 2005 order. This Court granted a hearing on the January 14, 2005 motion, and after a hearing on May 1, 2006, this Court entered an order allowing Poole to file an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 as further support for the relief requested in his Motion Requesting Reconsideration of Denial of his Motion to Alter or Amend Judgment. Poole filed a Section 2241 petition on May 31, 2006.

The most central question stemming from Poole's petition was which of Judge Perry's seemingly inconsistent orders controlled. The Court believed and emphatically expressed to the parties that if the April 21 order controlled, then Poole's enhanced sentence was improper. However, if the June 6 order controlled, then Poole stood before the Court at his August 6, 1997 sentencing as a career offender; thus, the enhanced sentence was proper. At a hearing held on

---

[1]   28 U.S.C. § 2244 and § 2255 prohibit successive motions unless authorized by the Court of Appeals.

August 30, 2006, all parties agreed that the federal district court was not the proper venue to sort out conflicts between state court orders. The parties also agreed that this Court would seek clarification from Judge William Missouri, Administrative Judge, Circuit Court for Prince George's County, Maryland as to the legal effect of Judge Perry's inconsistent orders.[2] On November 3, 2006, Judge Missouri conducted a hearing and ultimately vacated the entire PWID sentence and set the case in for a new trial. In light of Judge Missouri's decision, Poole filed the instant motion for summary judgment on his Section 2241 petition.

## ANALYSIS

The Government argues that Poole's Section 2241 petition should be denied for the following reasons: 1) the Court lacks jurisdiction to hear the petition; 2) even if the Court has jurisdiction, the Section 2241 petition is improper because Poole has not shown that Section 2255 is inadequate or ineffective; and 3) even if the Court reaches the merits of the Section 2241 petition, Poole cannot receive relief because he is unable to show that the state court conviction was vacated because of innocence, legal error, or constitutional invalidity.

**A.    Jurisdiction Over the Section 2241 Petition**

There are two primary statutory vehicles for prisoners to collaterally attack the legality of their detention, 28 U.S.C. § 2241 and 28 U.S.C. § 2255. Prior to 1948, federal prisoners could launch a collateral attack, challenging the constitutionality of their detention, through a Section 2241 petition for a writ of habeas corpus from a court sitting in the district where the prisoner was

---

[2] The Court sought clarification from Judge Missouri because Judge Perry has long since retired and now resides in New Mexico. As Administrative Judge of the Circuit Court for Prince George's County, Maryland, Judge Missouri has the responsibility of making the determination sought by this Court.

confined.  Section 2241 provides, in relevant part, that "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241.  A habeas petition under Section 2241 must be filed in the district in which the prisoner is confined.  *See* 28 U.S.C. § 2241(a).  "This requirement caused a number of practical problems, among which were difficulties in obtaining records and taking evidence in a district far removed from the district of conviction, and the large number of habeas petitions filed in districts containing federal correctional facilities." *In re Jones*,  226 F.3d 328, 332 (4th Cir. 2000) (citing *United States v. Hayman,* 342 U.S. 205 (1952)).  To address these practical problems, Congress enacted Section 2255, "which channels collateral attacks by federal prisoners to the sentencing court (rather than to the court in the district of confinement) so that they can be addressed more efficiently." *Triestman v. United States,* 124 F.3d 361, 373 (2d Cir. 1997); *see also In re Jones*, 226 F.3d at 332;  *Hayman,* 342 U.S. at 219.  Therefore, Section 2255 is the main procedural vehicle for federal prisoners to collaterally attack their sentences.

The Government argues that this Court lacks jurisdiction because Poole is confined in a Kentucky facility and the only reason for his presence in Maryland was to appear at a hearing on his own Section 2255 motion.  The Court disagrees with the Government.  Poole did in fact file his petition in the Eastern District of Kentucky, the jurisdiction in which he is confined.  However, the Kentucky court denied Poole's Section 2241 petition in part because it found that the Kentucky federal court had "no jurisdiction to correct proceedings in the United States District Court for the District of Maryland." Ky. Op. at 4.  The Kentucky court further stated an "examination of the events of 1997 and the extent to which various people pursued due diligence in 1997 are issues properly addressed by the Maryland trial and/or appellate courts." Ky. Op. at 8.  In light of the

5

Kentucky court's opinion, if this Court denies Poole's Section 2241 petition on jurisdictional grounds, it would foreclose the possibility of any court considering the petition on its merits. In an effort to avoid such a patently unfair result and in keeping with the policy underlying Congress's establishment of Section 2255, it is the opinion of the Court that the exercise of jurisdiction over the instant petition is proper if Poole falls within the provisions of Section 2255.

**B.      Section 2255 Allows Poole to Proceed Under Section 2241**

As the Fourth Circuit has noted in the landmark case of *In re Jones*, Congress did not intend for Section 2255 to limit the rights of federal prisoners to collaterally attack their convictions and sentences. *In re Jones*, 226 F.3d at 332-33 (citing *Davis v. United States,* 417 U.S. 333, 343 (1974); *Hayman,* 342 U.S. at 219). As a result, Section 2255 includes a "savings clause" that authorizes a prisoner to seek a writ pursuant to Section 2241 if a Section 2255 petition is "inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255.

While the Fourth Circuit has held that the savings clause may allow a federal prisoner to bring a Section 2241 petition, it found that this provision applies in only very limited circumstances. *See In re Jones*, 226 F.3d at 333. In *Jones*, the prisoner filed a successive petition for habeas corpus relief to vacate his sentence. The prisoner argued that because he filed his first Section 2255 motion prior to the enactment of the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, application to him of a provision of Section 2255 barring his petition would be impermissibly retroactive. He also argued that his inability to raise a *Bailey* defense to his conviction for mere possession of a firearm in relation to a drug trafficking offense made Section 2255 inadequate or

ineffective to test the legality of his detention.[3] Therefore, the prisoner argued, he should be entitled to a writ of habeas corpus under 28 U.S.C. § 2241. With respect to the question of whether AEDPA was impermissibly applied to the prisoner, the Fourth Circuit found that because the prisoner did not show he relied upon pre-AEDPA law, the retroactive application of AEDPA to him was not detrimental and thus permissible. *See In re Jones*, 226 F.3d at 332.

With respect to the prisoner's *Bailey* argument, the Court found that when the prisoner filed his first Section 2255 motion, he could not have used the *Bailey* defense because it would have been futile. *Id.* at 333. Since *Bailey* established that a prisoner whose conviction rested on an improper definition of "use" was incarcerated for conduct that is not criminal, the Fourth Circuit held that Section 2255 was inadequate and ineffective to test the legality of the prisoner's sentence, thus placing the prisoner within the "savings clause" of Section 2255. The court then announced that a Section 2255 motion is ineffective and inadequate to challenge the legality of detention when:

> (1) at the time of conviction, settled law of th[e] circuit or the Supreme Court established the legality of the conviction; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; and (3) the prisoner cannot satisfy the gatekeeping provisions of § 2255 because the new rule is not one of constitutional law.

*Id.* at 333-34.

Since the Fourth Circuit announced this standard, several courts in this Circuit have applied the *Jones* standard to petitioners' Section 2255 motions. *See, e.g., Coleman v. Brooks*, 133 Fed.

---

[3] In December 1995, after the prisoner filed his first Section 2255 motion, the Supreme Court held that the Government must prove more than mere possession of a firearm, but active employment of the firearm in order to convict under the "use" prong of 18 U.S.C. § 924(c)(1). *See Bailey v. United States*, 516 U.S. 137, 143 (1995).

Appx. 51, 52-53 (4th Cir. 2005) (unpublished); *Livingston v. Hickey*, 2006 U.S. Dist. LEXIS 76063

(D. W. Va. 2006); *Reyes v. Wendt*, 2006 U.S. Dist. LEXIS 89597, 6-8 (D. W. Va. 2006); *Foster v.*

*O'Brien*, 2006 U.S. Dist. LEXIS 87509 (D. Va. 2006); *Foye v. O'Brien*, 2006 U.S. Dist. LEXIS

83042 (D. W. Va. 2006).  In light of the present law of this Circuit and this Court's review of *Jones'*

progeny, especially the factual situations in which the *Jones* standard has been applied, the Court

thinks it necessary to expound upon the *Jones* decision as it relates to Poole's situation.

1.    **Rationale Behind *Jones* Standard**

        The facts underlying the *Jones* decision are critical to understanding the rationale behind the

standard announced by the Fourth Circuit.   In *Jones*, a prisoner found himself between a

constitutional "rock" and a statutory "hard place."   On the one hand, he stood convicted and

incarcerated for conduct that was not criminal—a violation of his constitutional rights.  On the other

hand, the prisoner had already used the only statutory vehicle available to attack his sentence before

it was determined that the conduct which he was convicted of was not in fact criminal.   Noting

congressional intent not to limit prisoners' rights to collaterally attack their sentences, the Fourth

Circuit was faced with an opportunity to interpret and apply the savings clause of Section 2255. *See*

*In Re Jones*, 226 F.3d at 332-33.  The Court looked to the reasoning of other Circuits in stating that

> [Section] 2255 is not inadequate or ineffective merely because an individual is
> unable to obtain relief under that provision.  A contrary rule would effectively nullify
> the gatekeeping provisions.   Nevertheless, there must exist some circumstance in
> which resort to § 2241 would be permissible; otherwise, the savings clause itself
> would be meaningless.

*Id.* at 333 (internal citations omitted).

        Expressly agreeing with the rationale and holdings of the Seventh Circuit, Second Circuit,

and Third Circuit, *see In re Davenport*, 147 F.3d 605 (7th Cir. 1998); *Triestman v. United States*,

124 F.3d 361 (2d Cir. 1997); and *In re Dorsainvil*, 119 F.3d 245 (3d Cir. 1997), respectively, the Fourth Circuit concluded that Section 2255 is inadequate and ineffective when the three prongs listed above are met. However, a close review of the rationale of the these courts reveals that the savings clause is not limited *only* to the situation the *Jones* prisoner faced. Specifically, the *Jones* court found persuasive the other Circuits' focus "on the more fundamental defect presented by a situation in which an individual is incarcerated for conduct that is not criminal but, through no fault of his own, has no source of redress." *Id.* at 333 n.3. The Seventh Circuit in *Davenport* reasoned that the basic function of habeas corpus is to give the prisoner "a reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of his conviction and sentence." *In re Davenport*, 147 F.3d at 609. The Second Circuit held in *Triestman* that the savings clause applies in "cases in which the petitioner cannot, for whatever reason, utilize § 2255, and in which the failure to allow for collateral review would raise serious constitutional concerns," or else "in those extraordinary circumstances where justice demands it." *Triestman*, 124 F.3d at 377-78. Following these courts' reasoning, the *Jones* court concluded that "in a limited *number of circumstances*, like those presented [in *Jones*], § 2255 . . . is inadequate or ineffective to test the legality of the detention of a federal prisoner." *Id.* (emphasis added).

**2.    The Applicability of *Jones* to Poole**

This Court believes that the rationale behind the *Jones* decision is favorably applicable to Poole's situation, although Poole cannot satisfy the exact standard announced in *Jones*. To be sure, Poole cannot meet the second prong of the *Jones* standard because he cannot point to any change in substantive law that deemed noncriminal the conduct upon which his state PWID conviction rested. However, this Court does not think the spirit of the *Jones* decision intended to ignore the

"fundamental defect" Poole currently faces.  The Fourth Circuit has never squarely addressed the issues and peculiar facts raised by Poole's situation.  Similar to the prisoner in *Jones*, Poole has also found himself trapped between a constitutional "rock" and a statutory "hard place."  Poole stands incarcerated as a career offender when he is not in fact a career offender, and, through no fault of his own, Poole currently has no source of redress.  When Poole filed his first Section 2255 motion, an attempt to argue that he was not a career offender would have been futile because this Court, operating under the assumption that Judge Perry's June 6 order was valid, believed Poole had two prior felony convictions.  Furthermore, at that time, Poole had no way of knowing that he was not a career offender.

The Government argues that Poole is not blameless here.  The Government contends that Poole slept on his rights and did nothing to try to determine the validity of the predicate conviction, but only stumbled upon it much too late.  The Court disagrees.  Poole did not procrastinate or sleep on his rights.  Instead, proceeding *pro se* at that time, Poole had been diligent in attempting to articulate his arguments of ineffective assistance of counsel and the absence of a valid predicate conviction.  However, it was not until November 3, 2006 that this Court, Poole, or the Government realized that Poole did not have two prior felony convictions at the time of his sentencing.  On these facts, justice certainly demands that Poole have an "opportunity to obtain a reliable judicial determination of the fundamental legality of his . . . sentence." *In re Davenport*, 147 F.3d at 609; *Triestman*, 124 F.3d at 377-78.  While the *Jones* prisoner's situation presented one circumstance where the savings clause applies, this Court believes that Poole's situation presents another unique and very limited circumstance where Section 2255 is inadequate and ineffective to test the legality of his sentence.  Therefore, the Court will allow Poole's habeas petition under Section 2241.

**C.     The Merits of Poole's Section 2241 Petition**

Having decided that Poole may proceed with his Section 2241 petition, the Court looks now to the Sentencing Guidelines to determine if Poole is entitled to habeas corpus relief. Application Note Six of Section 4A1.2 of the Sentencing Guidelines ("Note Six") provides:

> Sentences resulting from convictions that (A) have been reversed or vacated because of errors of law or because of subsequently discovered evidence exonerating the defendant, or (B) have been ruled constitutionally invalid in a prior cases are not to be counted.

U.S.S.G. § 4A1.2, cmt. n.6. Application Note Ten ("Note Ten"), on the other hand, provides:

> A number of jurisdictions have various procedures pursuant to which previous convictions may be set aside . . . for reasons unrelated to innocence or errors of law, e.g., in order to restore civil rights or to remove the stigma associated with a criminal conviction. Sentences resulting from such convictions are to be counted.

U.S.S.G. § 4A1.2, cmt. n.10. Poole argues that Note Six dictates, and the Government contends that Note Ten controls.

It is a well established canon of statutory interpretation that "adjacent statutory subsections that refer to the same subject matter must be read *in pari materia* as if they were a single statute." *Virginia Int'l Terminals, Inc. v. Edwards*, 393 F.3d 313, 317 (4th Cir. 2005). Thus, the Court must read Notes Six and Ten in conjunction, since they both refer to state actions affecting prior convictions used to determine criminal history under the Sentencing Guidelines. Reading the two Notes together, it is clear to the Court that a prior conviction must be counted under the Guidelines unless it is vacated for one of the three specified reasons: innocence, legal error, or constitutional invalidity. *See United States v. Martin*, 378 F.3d 353, 358 (4th Cir. 2004).

**1.     Judge Perry's April 21, 1997 Order**

In light of Judge Missouri's holding on November 3, 2006, the Court thinks Judge Perry's

reasons for revising Poole's sentence on April 21, 1997 are no longer relevant.[4] However, because

the Government has argued this point at length in its pleadings, the Court will address it briefly. The

Government argues that Judge Perry's April 21, 1997 order revising Poole's conviction from PWID

to simple possession was done for the sole purpose of obtaining favorable federal sentencing. *See*

*United States v. Martinez-Cortez*, 354 F.3d 830, 832 (8th Cir. 2004) (holding that a conviction

vacated for the sole purpose of obtaining favorable sentencing consequences is not a valid reason

for disregarding the conviction). However, in the papers on his motion to revise the sentence, Poole

argued that his guilty plea was not knowing and intelligent—a constitutional claim. Despite the

Government's beliefs as to why Judge Perry revised the PWID conviction to simple possession, the

Government has not and cannot prove the real reason for Judge Perry's decision. Judge Perry

simply entered a written order revising the conviction to simple possession with no opinion

expressing her reasons for doing so. At the June 6 hearing before Judge Perry, Poole's counsel did

not at all assert the constitutional arguments presented in the papers.[5] Therefore, there is no way of

knowing Judge Perry's rationale for striking the felony conviction.

At the November 3, 2006 hearing before Judge Missouri, Judge Missouri expressed his

personal thoughts on what happened:

> I'll tell you what I think happened and I'll tell you straightforward what I *think*
> happened. [Judge Perry] didn't read past the second, past the first audit, which is the
> second paragraph.

Transcript of Nov. 3, 2006 Hearing at 17. Based on this language in Judge Missouri's opinion and

---

[4] Judge Missouri not only vacated Judge Perry's June 6 order, he vacated Poole's entire PWID conviction. Therefore, Judge Perry's April 21 revision is no longer relevant to whether Poole had two prior felony convictions at the time of his sentencing in August 1997.

[5] Instead, Poole's counsel restricted his oral argument to issues about cooperation.

his statements about public confidence in court records, the Government argues that Judge Missouri held that Judge Perry's revision was due to a clerical error. The Court does not read Judge Missouri's opinion that way. Although Judge Missouri offered what he *thinks* happened, those thoughts are nothing more than speculation as to Judge Perry's rationale for striking the conviction. Everyone involved in this matter can conjure up reasons and scenarios that may explain Judge Perry's apparently inconsistent orders, and Judge Missouri's thoughts about what he believes happened are mere dicta. Judge Missouri's precise holding, on the other hand, is quite clear. Judge Missouri held that "the Court must uphold the signature of one of his members that was sitting, whether that member meant to sign what the member signed or not." *Id.* at 23. Therefore, all the state court and this Court knows about the reason for Judge Perry's decision to revise Poole's conviction is what is included in the language of her April 21 order—nothing, except the fact that the felony was reduced to a misdemeanor.

The Court cannot stretch the confines of Judge Missouri's holding to include the notion that Judge Perry revised Poole's sentence in order for Poole to receive favorable federal sentencing or for a clerical error. There is simply not enough here to say that the revision was not based on innocence, legal error, or constitutional invalidity. Given 1) Judge Missouri's holding that Judge Perry must stand by what she signed; 2) the fact that there is a paucity of evidence to show that Judge Perry's reasons were not based on innocence, legal error, or constitutional defect; and 3) the consistent and often repeated position of the Court that it would not have enhanced Poole's sentence if it had known about or knew the validity of Judge Perry's April 21 order, it is the opinion of the

Court that Poole has sufficiently established his entitlement to relief.[6]

**2.     Judge Missouri's November 3, 2006 Order Vacating Poole's PWID Conviction**

Even if Judge Perry's April 21 revision does not entitle Poole to relief, it is the opinion of the Court that Judge Missouri's order vacating Poole's PWID conviction provides adequate grounds for granting Poole's petition.  More specifically, the question is whether Judge Missouri vacated Poole's conviction for a reason that would preclude this Court from counting the conviction in its calculation of Poole's sentence.  Having carefully considered Judge Missouri's holding, the Court answers this question in the affirmative.

In ruling on Poole's Motion for Writ of Corum Nobis, Judge Missouri held:

> But the issue for the Court, even [assuming Judge Perry only meant to grant Poole a hearing], is what value is to be given to an order signed by a sitting Circuit Judge who has the authority, the power, and is not prevented from signing that order, and there is no indication of any fraud being perpetrated upon the Court, and this is not an irregularity, to a person having no involvement with this case whatsoever. Getting a copy of this order, they are entitled to rely upon an order that's signed by a Judge.  And I was really taken aback when I realized that a hearing was held subsequent to the signing of this order and no one mentioned the fact that the order had been signed with the language that's included with that order.  And you're right, Mr. Biddle [Poole's counsel], there's nothing about collateral consequences with regard to this whole affair.  It had to do with other things.  Therefore, the Court must uphold the signature of one of his members that was sitting, whether that member meant to sign what the member signed or not.

*Id.* at 22-23.  It appears to the Court that the gravamen of Judge Missouri's holding was the "value" and legal effect of Judge Perry's April 21 order.  Based on Judge Missouri's holding that he must

---

[6] The Court must stress, as it has all along, that had Poole's lawyer, or any lawyer, presented the Court with Judge Perry's April 21 order at the time of sentencing, and the Court was charged with deciding whether the April 21 order controlled or Judge Perry's June 6 order, the Court would have made the identical holding as did Judge Missouri.  The Court would have found that the Government failed to meet its burden of establishing the two prior felony convictions, and would therefore not have enhanced Poole's sentence.

uphold Judge Perry's signature, it is clear then that Judge Perry's June 6 order was ineffective. In essence, on June 6, Judge Perry did not have the authority to deny Poole the relief he requested because she had already granted that relief in April. Therefore, Judge Perry committed legal error when she denied Poole relief on June 6. Although Judge Missouri commented on the public trust and confidence in the courts, the real reason he vacated Poole's conviction centered around the fact that Judge Perry's June 6 order disregarded the *legal value* of her April 21 order.

This Court agrees with the Fourth Circuit that "it would be difficult to think of one who is more 'innocent' of a sentence than a defendant sentenced under a statute that by its very terms does not even apply to the defendant." *United States v. Maybeck*, 23 F.3d 888, 893 (4th Cir. 1994) (citing *Jones v. Arkansas*, 929 F.2d 375, 381 (8th Cir. 1991)). In light of Judge Missouri's holding that Judge Perry must stand by the signature on her April 21 order, it cannot be more clear to this Court that the career offender statute did not and does not apply to Poole. Therefore, Poole is, in a very real sense, innocent of the sentence this Court imposed upon him on August 6, 1997.

Habeas corpus is an extraordinary writ. The very nature of habeas corpus relief and what it provides when it is successfully achieved has earned it the time honored name The Great Writ. The procedural maze associated with litigating complex habeas issues like those involved in this case often creates challenges, even for seasoned attorneys and judges. However, regardless of the procedural barriers that may exist, the bottom line must be driven by fair play and simply doing what is right. In the interest of justice and equity, Poole's case compels this Court to do that which ought to be done. Because one of the predicate convictions which caused this Court to impose upon Poole an enhanced sentence has been vacated due to legal error, Note Six instructs the Court to disregard this conviction in the calculation of Poole's sentence. As such, this Court must grant Poole's request

for habeas corpus relief, vacate its original sentence, and re-sentence Poole in accordance with the

Sentencing Guidelines.

## **CONCLUSION**

For the reasons set forth above, the Court will GRANT Petitioner's Section 2241 Petition

for Habeas Corpus Relief (Paper No. 1) and GRANT Petitioner's Motion for Summary Judgment

(Paper No. 7).  An Order consistent with this Opinion will follow.


Date:   January 12, 2007

Alexander Williams, Jr.
United States District Judge

16